UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-905-JD-MGG |
| BRANDON WILLIAMS, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed a complaint[1] against eighteen separate defendants. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Scruggs alleges that: (1) officers used excessive force against him and an officer failed to intervene in that use of force; (2) an officer was deliberately indifferent to his medical needs; (3) medical staff denied Scruggs medical care for injuries caused by the

---

[1] Scruggs did not use this court's pro se prisoner complaint form. Pursuant to N.D. Ind. L.R. 7-6, the court requires he use the **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available in his prison law library. In the interests of efficiency, the complaint will be screened despite the deficiency. However, Scruggs is cautioned that future complaints must be on this court's form.

alleged use of excessive force; (4) policy changes related to recording cell extractions jeopardized his safety; (5) insufficient investigations of complaints pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.C.S. § 30301, *et seq.*, have jeopardized his safety; (6) his due process rights were violated by being placed on strip-cell status for fourteen days without a hearing; and (7) his due process rights were violated by delaying notice of disciplinary charges and a hearing on those charges such that he is unable to earn good time credits for a longer period of time than if the notice and hearing had occurred promptly.

Scruggs arrived at the Westville Correctional Facility on October 15, 2021. He was placed in a room with a broken toilet. There was waste in the toilet and on the walls. Scruggs asked to talk to a sergeant about the room. He was in handcuffs and leg cuffs. Correctional Officer Brandon Williams allegedly pushed him down onto the steel bunk. Scruggs hurt his back because he was in handcuffs and unable to break his fall. Officer Williams then slowly pulled Scruggs off the bed, causing his face to hit the floor first, injuring his chin and neck. Scruggs called Officer Williams a bitch. Officer Williams dropped down hard on Scruggs' back, then humped him and told Scruggs that he was the bitch. Officer Williams pulled Scruggs' hair and punched him twice in the right eye. Scruggs filed a Prison Rape Elimination Act ("PREA"), 34 U.C.S. § 30301, *et seq.*, complaint against Officer Williams based on this incident.[2]

---

[2] To the extent that Scruggs may be asserting a claim under PREA, he may not proceed. PREA does not provide a private right of action. *See Sims v. Doe*, No. 1:18-cv-2394-TWP-MPB, 2018 WL 4027632 at *2 (S.D. Ind. Aug. 22, 2018) (collecting cases).

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Scruggs states a plausible Eighth Amendment claim against Officer Williams based on the events occurring on October 15, 2021.

Scruggs further alleges that Correctional Officer Auston Rupert did nothing to stop Officer Williams or to help Scruggs. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Here, it is not clear that Officer Rupert had a realistic opportunity to intervene in the alleged use of excessive force. Therefore, Scruggs may not proceed against Officer Rupert on this claim.

On October 16, 2021, Officer Williams and Officer Rupert returned to Scruggs' cell to take him to the medical department. Scruggs turned in a medical form asking that the nurse document the injuries to his chin, mouth, neck, and eye. As Scruggs was leaving, he asked Nurse Cleary when he would be receiving his insulin injection at

3

Westville. Officer Williams told Scruggs to keep walking. Scruggs told Officer Williams he was still talking to the nurse. Officer Williams told Scruggs that she was done. Scruggs said she was not done. Officer Williams again said she was done, and Scruggs had to do what he said because he is a custody officer. Scruggs kept walking, but he said that he needed to know when he would get his insulin so he would know when to eat.

Scruggs believes that Officer Williams' refusal to allow him to continue to talk to the nurse about when his insulin would be given amounts to deliberate indifference to his medical needs. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). While diabetes is certainly a serious medical matter, it cannot be plausibly inferred that Officer Williams knew that Scruggs was at serious risk of being harmed if he did not have his

4

question about when he would receive his insulin answered at that very moment. These allegations do not state a claim.

About thirty minutes after Scruggs returned to his cell, Officer Williams and Officer Rupert were releasing inmates for recreation and showers. Scruggs declined recreation but indicated he wanted a shower. He put his hands in the cuff port to be cuffed. After one hand was cuffed, Officer Williams said something to Scruggs about seeing his wet or naked ass. Scruggs decided he did not want a shower and attempted to pull his hand back. Scruggs told Officer Williams to "get his gay ass hands off of [him]." ECF 2 at 5. Scruggs asked to see a sergeant. Officer Williams then claimed he was just playing, but Scruggs insisted on seeing a sergeant so he could file another PREA report. Officer Williams refused and, without warning, started spraying Scruggs with pepper spray. Scruggs was able to get the pepper spray away from Officer Williams. Officer Williams then opened Scruggs' cell door. Scruggs aimed the pepper spray at Officer Williams and told him to stay back. Officer Williams and Officer Rupert ran at Scruggs. Scruggs ran through the officers to the range, where he believed there was a video camera, and laid on the floor. His arm was repeatedly bent and twisted by Officer Williams, causing injury to his elbow and left shoulder. Officer Rupert was initially helping Officer Williams, but Scruggs was not fighting, and Officer Rupert stopped. Officer Rupert did not, however, intervene to stop Officer Williams.

Scruggs may proceed against Officer Williams for using excessive force on October 16, 2021, when he sprayed him with pepper spray and when he twisted his arm when Scruggs was no longer fighting. However, Scruggs may not proceed against

5

Officer Williams for opening Scruggs' cell door or subduing him when he possessed Officer Williams' pepper spray. Scruggs may not proceed against Officer Rupert because he only used force in response to Scruggs possessing pepper spray taken from a custody officer, and nothing in the complaint suggests that the force used by Officer Rupert exceeded what was warranted under the circumstances. Furthermore, it cannot be plausibly inferred from the complaint that Officer Rupert had a reasonable opportunity to intervene to prevent Officer Williams from spraying the pepper spray, that Officer Rupert was aware that Officer Williams was hurting Scruggs after he was subdued, or that Officer Williams twisted Scruggs' arm for sufficiently long for Officer Rupert to have a realistic opportunity to intervene and stop Officer Williams.

After the incidents on October 15, 2021, and October 16, 2021, Scruggs filled out four medical forms asking for treatment for his injuries and other medical issues. He saw a nurse two weeks later. She looked at his arm and said it was not that swollen. It is unclear why his other medical issues were not addressed at the same time. When Scruggs drafted his complaint, he had not had "nurse's sick call," been seen by a doctor, or received the x-rays he requested. He has sued Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, and Doctor Lwia. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983, and

defendants cannot be held liable simply because they employed or supervised the alleged wrongdoer. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Scruggs does not explain how any of the named defendants were involved in denying him medical care, or even who was responsible for reviewing requests for medical care. Thus, he may not proceed on these claims.

Scruggs has also sued Warden Galipeau and Commissioner Robert E. Carter, Jr. Scruggs alleges that they did away with the requirement that cell extractions be videotaped and the failure to videotape cell extractions facilitated Officer Williams' attacks on Scruggs. There is no constitutional right to audio or video recordings of cell extractions. A policy of not recording cell extractions does not cause the use of excessive force; the attacking officer causes the use of excessive force. These allegations do not state a claim.

Custody staff initially refused to allow Scruggs to file a PREA complaint, but he did ultimately file a report regarding Officer Williams' alleged sexual assaults. The report was filed with Sergeant Due, and Scruggs was told that I.I. Investigator McKenney would be handling the complaint. Scruggs alleges that he was not contacted by McKenney and that his investigations are one-sided in that he only talks with staff. Additionally, Sergeant Due refused to take pictures of Scruggs' injuries. Scruggs believes their actions (or lack thereof) show deliberate indifference to his safety. Scruggs cannot state a claim for relief against Sergeant Due or Investigator McKenney under PREA because it does not provide a private right of action. *See Sims v. Doe*, No. 1:18-cv-

2394-TWP-MPB, 2018 WL 4027632 at *2 (S.D. Ind. Aug. 22, 2018) (collecting cases). Similarly, prison staff's failure to follow internal policies pertaining to PREA reports does not state a claim under § 1983. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official is deliberately indifferent when he "effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). The complaint does not allege facts from which it can be inferred that either Sergeant Due or I.I. Investigator McKenney were aware that Scruggs' safety was in danger following the alleged incidents. Therefore, Scruggs may not proceed against Sergeant Due or I.I. Investigator McKenney.

After the incident on October 16, 2021, Scruggs alleges that Capt. Lewis, Lt. Crittendon, Lt. C, Sgt. McGorow, and an unnamed Sergeant in WCU had him placed on "strip-cell" status for fourteen days. He asserts that this violated the Due Process Clause because he was not found guilty of a rule violation prior to being punished. Scruggs further asserts that strip-cell is only appropriate when an inmate uses his property to

8

harm himself or staff. Scruggs did not use his property to harm anyone (he had not yet received his property, as he had just arrived at Westville), so Scruggs believes he should not have been placed on strip-cell.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings, including an opportunity to be heard before an impartial decision-maker. *Wolff v. McDonnell*, 418 U.S. 539, 556-73 (1974). However, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Scruggs alleges only that he was placed on strip-cell status for fourteen days. This does not amount to an atypical or significant hardship. Therefore, he was not entitled to any rights under *Wolff v. McDonnell.* To the extent that placing Scruggs on strip-cell status violated the prison's own rules, a policy violation does not violate the Constitution and he therefore does not state a claim. *Scott*, 346 F.3d at 760 ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

Scruggs also sues Warden Galipeau, Commissioner Carter, D.H.B. Screening Officer Malcolm, and D.H.B. Hearing Officer M. Velazquez over the manner disciplinary hearing are handled. Ninety days after an inmate has been found guilty of a conduct violation, he can be returned to his time class. Under the prison's rules, disciplinary hearings should take place within seven days. At Westville, inmates are not being screened for three weeks to two months after the incident. At the time Scruggs

9

drafted his complaint, he had not yet received notice of any alleged conduct violation or had a hearing regarding his conduct on October 15, 2021, and October 16, 2021. By delaying the hearing, the ninety-day waiting period is also delayed. Scruggs believes the ninety days should start on the seventh day regardless of whether a hearing has taken place.

The Fourteenth Amendment guarantees prisoners advance written notice of the charges in prison disciplinary hearings and an opportunity to be heard before an impartial decision-maker. *Wolff*, 418 U.S. at 563-67. While Scruggs has a due process right to advance written notice of the charges against him and a right to a hearing, he does not have a due process right to receive that notice or hearing within a particular time frame. Here, it is unclear if Scruggs was ever charged with a disciplinary violation related to the incidents occurring on October 15, 2021, and October 16, 2021, when he received notice, or when he received a hearing. When he drafted his complaint approximately six weeks after the incident, he had not yet received notice of a charge. He appears to be merely speculating that there will be a charge. Until he is charged with an offense and it is known how much time passed between the alleged conduct violation and receipt of notice, it cannot be plausibly inferred that the delay in notice was so great as to deprive Scruggs of due process of law. *See U. S. ex rel. Houston v. Warden, Stateville Corr. Ctr.*, 635 F.2d 656, 659 (7th Cir. 1980) (two month delay in informing prisoner of charges is not sufficient to deny due process of law). Furthermore, prisoners have no liberty or property interest in unearned good-time credits. *Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996). Because Scruggs has no

10

protected interest in good time credit he has not earned, he is not entitled to due process protections related to that unearned benefit. Accordingly, these allegations do not state a claim.

Scruggs has filed a motion asking the court to have the defendants served by the United States Marshals Service. ECF 17. Scruggs is not proceeding in forma pauperis. Therefore, the court will not direct the United States Marshals Service to serve Officer Williams pursuant to 28 U.S.C. § 1915(d). Rather, it is Scruggs' obligation to serve Officer Williams. If Scruggs desires the assistance of the United States Marshals Service, he may contact them directly to make appropriate arrangements. Therefore, the motion (ECF 17) will be denied.

For these reasons, the court:

(1) GRANTS Christopher L. Scruggs leave to proceed against Correctional Officer Brandon Williams in his individual capacity for compensatory and punitive damages for excessive force and sexual assault on October 15, 2021, in violation of the Eighth Amendment;

(2) GRANTS Christopher L. Scruggs leave to proceed against Correctional Officer Brandon Williams in his individual capacity for compensatory and punitive damages for excessive force on October 16, 2021, when he sprayed Scruggs with pepper spray and twisted Scruggs' arm after Scruggs had been subdued, in violation of the Eighth Amendment;

(3) DENIES Christopher L. Scruggs' Motion to Have the Defendant's Served by the United States Marshal as to Both Summons and Waiver (ECF 17);

(4) DISMISSES all other claims;

(5) DISMISSES Correctional Officer Auston Rupert, Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, Doctor Lwia, Warden Galipeau, Commissioner Robert E. Carter, Jr., Sergeant Due, I.I. Investigator McKenney, Capt. Lewis, Lt. Crittendon, Lt. C, Sgt. McGorow, an unnamed Sergeant in WCU, D.H.B. Screening Officer Malcolm, and D.H.B. Hearing Officer M. Velazquez;

(6) DIRECTS Christopher L. Scruggs to make arrangements to serve Correctional Officer Brandon Willliams; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Correctional Officer Brandon Williams to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 20, 2022

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT