UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-905-JD-MGG |
| BRANDON WILLIAMS, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed an amended complaint against nine separate defendants. ECF 35. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Scruggs alleges that: (1) he was subjected to unconstitutional conditions of confinement; (2) he was subjected to excessive force; (3) an officer failed to intervene in the use of force; (4) he was retaliated against in violation of the First Amendment; (5) medical staff denied Scruggs medical care for injuries caused by the alleged use of excessive force; and (6) a correctional officer prevented him from attending a medical appointment for his eyes, one of which was injured during the alleged use of force.

Scruggs arrived at the Westville Correctional Facility on October 15, 2021. He was placed in a room with a broken toilet. There was waste in the toilet and on the walls. Scruggs asked to be placed in another room, but Correctional Officer Brandon Williams and Correctional Officer Austin Rupert denied his request. Scruggs asked to talk to a sergeant about the room. His request was denied. Scruggs then demanded to see a sergeant. In response, Officer Williams allegedly pushed Scruggs down onto the steel bunk. Scruggs hurt his back because he was in handcuffs and unable to break his fall. Officer Williams then slowly pulled Scruggs off the bed while Officer Rupert allegedly watched,[1] causing Scruggs' face to hit the floor first, injuring his chin and neck. After being pulled off the bed, Scruggs called Officer Williams a "bitch." ECF 35 at 6. Officer Williams dropped down hard on Scruggs' back. Scruggs asked Officer Williams to get off his back, explaining repeatedly that he has back problems, but Officer Williams would not get off his back. Next, Officer Williams allegedly humped Scruggs approximately six times and told Scruggs that he was "the bitch" or "his bitch." ECF 35 at 7. Officer Williams pulled Scruggs' hair and punched him twice in the right eye. Officer Rupert allegedly watched and did nothing throughout the encounter.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to

---

[1] It is unclear how Scruggs knows this, as he states that he was on the bed face down, but the court accepts his assertion that Officer Rupert watched as true for purposes of screening.

2

cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Scruggs states a plausible Eighth Amendment claim against Officer Williams based on the events occurring on October 15, 2021.

State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Giving Scruggs the benefit of the inferences to which he is entitled at this early stage of the case, he will also be permitted to proceed against Officer Rupert on claim for failure to intervene in the alleged use of excessive force.

On October 16, 2021, about thirty minutes after Scruggs returned to his cell from a nurse's visit, Officer Williams and Officer Rupert were releasing inmates for recreation and showers. Scruggs declined recreation but indicated he wanted a shower. He put his hands in the cuff port to be cuffed. After one hand was cuffed, Officer Williams said something to Scruggs about seeing his wet or naked ass. Scruggs decided he did not want a shower and attempted to pull his hand back, but Officer Williams pulled on the handcuffs. Scruggs told Officer Williams to "get his gay ass hands off of [him]." ECF 22 at 9. Scruggs asked to see a sergeant so he could file another PREA report. Officer Williams then claimed he was just playing, but Scruggs insisted on

3

seeing a sergeant. Officer Williams refused. He took out his pepper spray and started spraying Scruggs with pepper spray. Scruggs was able to get the pepper spray away from Officer Williams. Officer Williams then opened Scruggs' cell door. Scruggs aimed the pepper spray at Officer Williams and told him to stay back. Officer Williams and Officer Rupert ran at Scruggs. Scruggs ran through the officers to the range, where he believed there was a video camera, and laid on the floor. His arm was repeatedly bent and twisted by Officer Williams, causing injury to his elbow and left shoulder. Officer Rupert was initially helping Officer Williams, but Scruggs was not fighting, and Officer Rupert stopped. Officer Rupert did not, however, take any steps to stop Officer Williams.

Scruggs may proceed against Officer Williams for using excessive force on October 16, 2021, when he sprayed him with pepper spray and when he twisted Scruggs' arm.[2] However, Scruggs may not proceed against Officer Williams for opening Scruggs' cell door[3] or subduing him when he possessed Officer Williams' pepper spray. Scruggs may not proceed against Officer Rupert because he only used force in response to Scruggs possessing pepper spray taken from a custody officer, and

---

[2] Scruggs argues that the attacks on October 16, 2021, were in retaliation for filing or threatening to file a PREA report. To the extent that these allegations might state a claim, it would be redundant. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (analyzing allegations under the most "explicit textual source of constitutional protection").

[3] The complaint notes that this was a violation of prison policy. Prison policy violations, however, do not amount to constitutional violations. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

nothing in the complaint suggests that the force used by Officer Rupert exceeded what was warranted under the circumstances. Furthermore, it cannot be plausibly inferred from the complaint that Officer Rupert had a reasonable opportunity to intervene to prevent Officer Williams from spraying the pepper spray or twisting Scruggs' arm. Scruggs believes Officer Rupert should have taken some action as soon as the inappropriate comment was made. While in retrospect, intervention at that point in time might have prevented the events that followed, it cannot be plausibly inferred that Officer Rupert could have known that Scruggs would attempt to pull his wrist back in with one cuff on, that Officer Williams would pull on Scruggs' wrist, or that Officer Williams would remove his pepper spray and spray Scruggs. Scruggs argues that Officer Rupert watched Officer Williams remove the pepper spray, but it isn't clear how Scruggs can know that Officer Rupert was watching Officer Williams do this. Furthermore, removing pepper spray does not take sufficiently long to infer that Officer Rupert had an opportunity to intervene and stop the use of pepper spray. Scruggs suggests that Officer Rupert could have told Officer Williams to uncuff him or could have uncuffed Scruggs himself, but this too presumes that Officer Rupert knew what would happen next, and there's no basis for doing so. Therefore, Scruggs may not proceed against Officer Rupert on this claim.

Scruggs also claims that he was subjected to unconstitutional conditions of confinement when he was placed in the room with a broken toilet and waste on the walls by Brandon Williams and Austin Rupert. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's

5

necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference."). It is unclear if Scruggs was subjected to a serious risk of harm which violated the Eighth Amendment, but these allegations are sufficient to state a claim against Brandon Williams and Austin Rupert.

6

After the incidents on October 15, 2021, and October 16, 2021, Scruggs had injuries to his chin, neck, back, eye, elbow, and shoulder. He filled out four medical forms asking for treatment for his injuries. These forms were given to Nurses Cleary, Livers, Eakens, and Kepper. Scruggs saw the nurses twice a day when he received insulin, and he would ask them about his requests for sick call for his injuries at those meetings. One nurse (not a defendant) looked at his arm about two weeks later and said his arm was not that swollen, but she did not schedule him for sick call or schedule him to see a doctor. Scruggs saw Dr. Lwia twice for chronic care visits, but Dr. Lwia would only treat Scruggs' chronic conditions and refused to address his other injuries. Even though Dr. Lwia would not address his injuries, when Scruggs later requested sick call, the response indicated that he had already been seen by the doctor at a chronic care visit. Thus, his injuries were not assessed for months. He has sued Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, and Doctor Lwia.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the

7

defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983, and defendants cannot be held liable simply because they employed or supervised the alleged wrongdoer. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Giving Scruggs the benefit of the inferences he is entitled to at this stage of the case, he will be granted leave to proceed against Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, and Dr. Lwia.

Scruggs also named Nurse Medley as a defendant. In May, Nurse Medley saw Scruggs for sick call after he requested x-rays of his neck, elbow, and shoulder. The x-rays were ordered, but they were listed as "non-urgent." Scruggs feels that this demonstrates deliberate indifference to his suffering. One month later, the x-rays had not yet been performed. It is unclear that Nurse Medley has any control over when the x-rays are performed. These facts do not permit an inference that Nurse Medley acted with deliberate indifference to Scruggs' needs, and he therefore will not be granted leave to proceed against her.

8

About six months after the attacks, Scruggs was scheduled to see an eye doctor. The same day, he was pulled from his room to sign some settlement papers. Scruggs thought it would be quick, and he did not use the restroom before leaving his room. After about two and a half hours, Scruggs asked to return to his room to use the restroom. He also needed to eat; he felt like he was going to pass out. Correctional Officer Davis did not want to take Scruggs back to his cell and then return him to the front. Officer Davis told Scruggs he needed to pick between going to see the eye doctor and using the restroom and eating. After about thirty more minutes, Scruggs asked to go back to his room. He was again told that he would not be going to the doctor if he went back to his room. However, Officer Davis said that, if Scruggs returned to his room, he would get the eye doctor appointment rescheduled. The appointment was not rescheduled, and Scruggs believes Officer Davis only said this so he would not be required to bring Scruggs back up front. This appears to be based on nothing more than speculation, and Scruggs therefore will not be permitted to proceed against Correctional Officer Davis.

For these reasons, the court:

(1) GRANTS Christopher L. Scruggs leave to proceed against Correctional Officer Brandon Williams in his individual capacity for compensatory and punitive damages for excessive force and sexual assault on October 15, 2021, in violation of the Eighth Amendment;

(2) GRANTS Christopher L. Scruggs leave to proceed against Correctional Officer Austin Rupert in his individual capacity for compensatory and punitive

9

damages for failure to intervene in Correctional Officer Brandon Williams' alleged use of excessive force on October 15, 2021, in violation of the Eighth Amendment;

(3) GRANTS Christopher L. Scruggs leave to proceed against Correctional Officer Brandon Williams in his individual capacity for compensatory and punitive damages for excessive force on October 16, 2021, when he sprayed Scruggs with pepper spray and twisted Scruggs' arm after Scruggs had been subdued, in violation of the Eighth Amendment;

(4) GRANTS Christopher L. Scruggs leave to proceed against Correctional Officer Brandon Williams and Correctional Officer Austin Rupert in their individual capacities for compensatory and punitive damages for subjecting Scruggs to unconstitutional conditions of confinement on October 15, 2021, in violation of the Eighth Amendment;

(5) GRANTS Christopher L. Scruggs leave to proceed against Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, and Dr. Lwia in their individual capacities for compensatory and punitive damages for deliberate indifference to his medical needs following attacks on October 15, 2021, and October 16, 2021, in violation of the Eighth Amendment;.

(6) DISMISSES all other claims;

(7) DISMISSES Nurse Medley and Correctional Officer Davis;

(8) LIFTS the stay (ECF 38);

(9) DIRECTS Christopher L. Scruggs to make arrangements to serve Correctional Officer Brandon Williams, Correctional Officer Austin Rupert, Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, and Dr. Lwia; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Correctional Officer Brandon Williams, Correctional Officer Austin Rupert, Nurse Cleary, Head Nurse Livers, Nurse Eakens, Nurse Kepper, and Dr. Lwia to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 14, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT